UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>ERIC DONAIRE CONSTANZA-BRAN )<br>) | Criminal No.: 06-248 (JDB) |

**DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

Defendant, Eric Constanza-Bran, through undersigned counsel, respectfully moves the Court to Suppress Statements taken in violation of the Constitution in association with his arrest on September 27, 2006. The motion to suppress is made pursuant to Fed. R. Crim. P. 12(b)(3) and is supported by the discussion below. An evidentiary hearing on this motion is respectfully requested.[1]

**BACKGROUND**

**1.      Procedural Background**

On September 27, 2006 Mr. Constanza-Bran was arrested in El Salvador. The arrest was carried out by Salvadoran Law Enforcement Agents and agents of the United States Drug Enforcement Agency. Mr. Conztanza-Bran was arrested with his two co-defendants pursuant to an indictment charging him with Conspiracy to Import Five Kilograms or More of Cocaine into the United States in violation fo 21 U.S.C. § 960 and § 963, Aiding and Abetting in violation of

---

[1] In the event counsel learns of new information supporting the need for further motions, counsel respectfully reserves Mr. Constanza-Bran's right to later supplement this motion and/or file additional motions which may be appropriate in his case.

1

18 U.S.C. § 2 and Forfeiture in violation fo 21 U.S.C. § 853 .

On September 28, 2006 Mr. Constanza-Bran appeared before Magistrate Judge John M. Facciola for his initial appearance. After being advised of his rights the Court granted the Government's request for temporary Detention pending a Detention Hearing. On October 5, 2006 Mr. Constanza-Bran conceded to pre-trial Detention based on the government's representation that the United States Department of Immigration and Custom Enforcement had lodged a detainer against him.

**2.     Factual Background**

The government has alleged that Mr. Constanza-Bran and the co-defendants conspired to import cocaine to the United States through the Mexican border. The government's theory is that Mr. Constanza-Bran, who is a citizen of Guatemala, was going to establish the means to receive Colombian cocaine and then to have it shipped to Mexico through the Guatemalan/Mexican border. The government has alleged that after he was arrested Mr. Constanza-Bran agreed to speak to the DEA agents who participated in his arrest.

After arresting Mr. Constanza-Bran, the officers took him to an airfield in El Salvador where he was forced into a plane that transported him against his will to the United States. During the flight to the United States the DEA agents alleged that they advised Mr. Constanza-Bran of his constitutional rights in the Spanish language. The agents further indicated in a DEA Form Report of Investigation that the constitutional rights were communicated through a Department of Justice Declaration of Rights Form. The government claims that after acknowledging the meaning and substance of his constitutional rights Mr. Constanza-Bran agreed to being interviewed by the two DEA agents who took him into custody. In a Report of

Investigation form, the DEA agents transcribed inculpatory admissions that Mr. Constanza-Bran made regarding the allegations contained in the indictment.

**ARGUMENT**

I. **THE STATEMENTS OBTAINED ON SEPTEMBER 27, 2006 MUST BE SUPPRESS AS THEY WERE INVOLUNTARILY MADE AND TAKEN IN VIOLATION OF THE FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION**

A. This Court must suppress Mr. Constanza-Bran's statements unless the government demonstrates that they were made voluntarily

The government has alleged that Mr. Constanza-Bran made statements to the arresting DEA agents while he was in their custody, either before or during his involuntary transportation to the United States. Mr. Constanza-Bran allegedly admitted being the point person in Guatemala who was going to facilitate the entry of cocaine into Guatemala and its shipment to Mexico through the Guatemalan border. Before introducing those statements at trial, either in its case-in-chief or as impeachment or rebuttal evidence, the government bears the burden of proving that the statements were voluntary. See Mincey v. Arizona, 437 U.S. 385, 398 (1978); Lego v. Twomey, 404 U.S. 477, 489 (1972). The test for voluntariness is whether a statement is the "product of an essentially free and unconstrained choice by its maker." Culombe v. Connecticut, 367 U.S. 568, 602 (1961).

The determination of whether a statement was made voluntarily "requires a careful evaluation of all the circumstances of the interrogation." Mincey, 437 U.S. at 401. The Court must consider the "totality of the circumstances" in deciding whether the defendant made his statement voluntarily. Fikes v. Alabama, 352 U.S. 191, 197 (1957); see also Gallegos v.

Colorado, 370 U.S. 49, 52 (1962) (determination of whether an accused's statement was made involuntarily so as to render it inadmissible "involves close scrutiny of the facts of individual cases"). Specifically, the Court must examine the government's efforts to overbear Mr. Constanza-Bran's free will in relation to his capacity to resist those efforts. See Davis v. North Carolina, 384 U.S. 737 (1966). The Court must examine Mr. Constanza-Bran's background, experience, and conduct to determine whether his statements were the product of a "rational intellect and a free will." Blackburn v. Alabama, 361 U.S. 199, 207-08 (1980). The Court must suppress Mr. Constanza-Bran's statements unless the government can demonstrate, in light of all of these considerations, that the statements were made voluntarily.

B.   This Court must suppress Mr. Constanza-Bran's statements because they were obtained in violation of Miranda v. Arizona

Even if the statements were made voluntarily, Miranda requires suppression of Mr. Constanza-Bran's statements during the government's case-in-chief because Mr. Constanza-Bran was not adequately apprised of his right against self-incrimination prior to undergoing custodial interrogation. See, e.g., Pennsylvania v. Muniz, 496 U.S. 582, 589-90 (1990). A person is in "custody" for purposes of Miranda when he "has been . . . deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Whether a person is in custody depends upon "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). "[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v.

4

<u>Innis</u>, 446 U.S. 291, 301 (1980). The government will be unable to demonstrate, at a hearing, that Mr. Constanza-Bran's statements were not made in response to custodial interrogation – <u>i.e.</u>, in response to words or actions that officers should have known would elicit an incriminating response.

## **CONCLUSION**

For the foregoing reasons, defendant Eric Constanza-Bran moves the Court to suppress the statements that he allegedly made to the arresting DEA agents on September 27, 2006.

Respectfully submitted,

A.J. Kramer
Federal Public Defender


_____/s/_____
Carlos J. Vanegas
Danielle Jahn
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500