UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

    v.

ERIK DONAIRE CONSTANZA BRAN

                                     Criminal No. 06-248 (JDB)

    and

JUAN DANIEL DEL CID MORALES

    and

ALVARO RENE AUGUSTIN MEJIA

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
MOTION TO SUPPRESS STATEMENTS**

The United States of America, by and through counsel, respectfully opposes the defendants' motions to suppress statements, for those reasons as more fully outlined below, and respectfully moves this Court for an order denying these motions.

**FACTS**

Law enforcement officers in El Salvador arrested the defendants on September 27, 2006. The defendants, Guatemalan Nationals, had arrived in El Salvador to discuss a proposed narcotics transaction, on the invitation of informants working for the U.S. Drug Enforcement Administration.

The defendants had attended one other meeting for the same purpose, on July 19, 2006, also in El Salvador. At that meeting, the defendants accepted $10,000.00 in cash from the informants. The meeting was recorded.

In August 2006, a federal grand jury in the District of Columbia indicted the defendants on charges that they conspired to import cocaine into the United States. 21 U.S.C.

959, 960 and 963. The District Court issued warrants for their arrests the same day that the grand jury returned the indictment.

Agents arrested the defendants about 1:30 in the afternoon on September 27th. About three hours later, the defendants boarded a DEA plane, along with two agents and two pilots. While boarding the plane, Defendant Erik Donaire Constanza Bran spontaneously stated that he knew he was going to the United States. The plane, in fact, flew to Florida, where it stopped for re-fueling. It then flew to Washington, D.C. In all, the flight lasted about 12 hours.

Shortly after takeoff from El Salvador, DEA agents Steven Fraga and Jason Sandoval questioned Defendant Constanza Bran. Agent Sandoval is fluent in Spanish.

The agents read the defendant what are commonly known as Miranda warnings from a printed waiver of rights form. The form is in Spanish. The agents read each line to the defendant, and each time asked the defendant whether he understood. Each time, the defendant indicated that he understood, and placed his initials at the end of each line.

The defendant reviewed the entire waiver of rights form, and agreed to speak with the agents. The agents questioned the defendant. The defendant spoke about his involvement in this case.

The agents repeated this process with defendants Juan Daniel Del Cid Morales and Alvaro Rene Augustin Mejia, separately. Each defendant indicated that he understood his rights, and each agreed to speak with the agents, also giving statements

about their involvement in this case.

The agents spoke with the defendants individually. While the interview with one defendant took place, the remaining two defendants sat with noise-canceling headphones on their heads, covering their ears.

In each interview, the agents and the defendants spoke in a conversational tone. The agents did not raise their voices. They did not promise nor threaten anything. They allowed the defendants to sleep during portions of the flight. They did not question the defendants outside of the interviews conducted during flight. None of the defendants, meanwhile, requested an attorney, nor indicated that they did not want to speak.

## ARGUMENT

With certain exceptions, the courts generally require that certain rights be given to a criminal defendant before any custodial questioning or interrogation of the defendant take place. *Miranda v. Arizona,* 382 U.S. 436 (1966). The rights given must substantially comply with what are called *Miranda* warnings: (1) the defendant has a right to remain silent, (2) anything he says can be used against him in court, (3) he has the right to the presence of an attorney, and (4) if he cannot afford an attorney, one will be appointed for him before any questioning, if he chooses.

A defendant must be in custody and interrogated before he is entitled to the warnings. *California v. Beheler,* 463 U.S. 1121 (1983). A defendant may request that questioning end at any time, and may also request an attorney at any time during the interrogation with law enforcement. A defendant also may waive, or give up, his rights. *United States v. Pelton, 835* F.2d 1067 (4th Cir. 1987).

In any event, a reviewing court will consider the "totality of the circumstances" in deciding whether (1) custodial interrogation took place, and whether (2) the defendant knowingly, intelligently and voluntarily waived his rights before speaking to police. *Beheler, supra.*

In the present case, agents spoke to each defendant individually, shortly after their arrests in El Salvador. The agents reviewed each *Miranda* warning, orally and in writing, with each defendant before taking a statement from each individual.

In each instance, the defendant indicated that he understood his rights, and that he wanted to speak with the agents about the case. The agents did not promise the defendants anything, nor did they threaten anything, to induce statements. When the plane stopped in Florida, the defendants were allowed access to bathrooms, and were fed from available vending machines. The defendants never requested an attorney, nor asked that questioning stop. No other questioning took place outside of the formal interviews conducted during flight.

## CONCLUSION

The government concedes that the questioning of each defendant in this case constituted custodial interrogation within the meaning of *Miranda*. However, a "totality of the circumstances" analysis shows that each defendant knowingly, voluntarily and intelligently waived his rights before speaking to the agents. Therefore, this Court should deny each motion to suppress statements.

Respectfully Submitted,

KENNETH BLANCO

Chief
Narcotic and Dangerous Drug Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C. 20005


BY: _____
      Paul Laymon
      Michael Mota
      Trial Attorneys
      Narcotic and Dangerous Drug Section
      U.S. Department of Justice
      Washington, D.C. 20005