UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | * | |
| v. | * | **Criminal No. 06-248 (JDB)** |
| **ERIC CONSTANZA- BRAN** | * | |
| and | * | |
| **JUAN DANIEL DEL CID MORALES** | * | |
| and | * | |
| **ALVARO RENE AUGUSTIN MEJIA** | * | |

**RESPONSE TO REQUEST FOR DISCLOSURE OF INFORMANT INFORMATION**

Comes the United States through Kenneth A. Blanco, Chief, Narcotic and Dangerous Drugs, Department of Justice, and Paul W. Laymon, Trial Attorney, Narcotic and Dangerous Drugs, and responds to requests for information involving a confidential informant who will be a witness at trial.

At trial, the government intends to call a witness who worked as an informant for the Drug Enforcement Administration. The witness, posing as a Colombian drug trafficker, spoke with the defendant over the telephone and met with the defendant in person. The defendant agreed to assist the informant in moving a large quantity of cocaine from Colombia through Guatemala onto the United States. The government will, by June 11, 2007, orally disclose the identity of this witness to defense counsel.

The witness has a prior federal drug conviction, having been convicted in 1994 in the

Southern District of Florida of trafficking cocaine. The government filed motions to reduce the witness' sentence and the witness was eventually sentenced to 36 months in the BOP. The witness was in jail from late 1993 until the middle of 1996. During that time the witness provided substantial assistance to the government in several drug cases, and it is that assistance which led to the reduced sentences. Though sentenced to five years supervised release, the witness' supervised release was reduced to about two months, apparently at the request of the government, so that the witness could assist the DEA without the constraints of supervised release.

The witness has been a paid informant with the DEA since his release from the BOP in 1996. The witness also has worked with the FBI, BICE (formerly, US Customs), and the Sarasota Police Department in Florida. The witness and has been paid by those agencies as well. In the past 11 years, the witness has been paid more than one million dollars by all listed agencies, although most of the money has come from the DEA. The witness has testified at three federal trials, at two trials in the Caribbean, and at one state trial. The cases all involved drug offenses and in each case the witness served as an informant for the DEA or some other law enforcement agency. None of those cases had or have any connection with the instant case.

In 1997, the witness testified at a trial in Tampa involving brothers from Cali, Colombia who smuggled cocaine into the US. In 2002, the witness testified at a trial in Tampa involving a 27 year old African American defendant from Chicago. And in September 2006, the witness testified in Orlando at the trial of a Mexican defendant involved with 69 kilograms of cocaine. The witness testified in the Cayman Islands in 2001, in the case of a former police officer who was selling cocaine. In 2002, the witness testified in a trial in the Bahamas where the defendant had offered the witness (posing as a drug dealer) one and one half million dollars

to buy cocaine from the witness. And in 2004, the witness testified at a trial in Sarasota, Florida in a case involving one kilogram of cocaine.

The witness has been reimbursed for expenses incurred while serving as an informant, including air fare, lodging, telephone, and food. For a short time after being released from the BOP, the DEA paid the witness about $2000 a month. The witness also has received cash awards from DEA for his service as an informant. The largest such cash award was $250,000. In the instant case, the witness has been reimbursed for his expenses and has received a cash award of $10,000. The witness' cash awards over 11 years of service exceed $500,000. The witness received cash awards after he testified at some of the trials noted above. The above described amounts are all included in the more than one million dollars the witness has received.

The witness has been a legal resident of the US since well before the witness came to work with the DEA. The witness has never been deported. When the witness was first released from the BOP, the DEA interceded on the witness' behalf to keep the witness in the country. In 2003, the DEA and the Sarasota Police Department appeared before an immigration law judge in Louisiana, who was holding a hearing to determine if the witness should be deported. The judge agreed not to deport the witness. The witness does not possess an American passport and is not an American citizen, but lives in the US legally.

The witness was involved in trafficking drugs from about 1984 to 1993. His illegal drug trafficking started with marijuana and later included cocaine. The witness estimated smuggling into the United States 3000 to 4000 pounds of marijuana and more than 2000 kilograms of cocaine. The witness was primarily a transporter of drugs, using planes owned by the witness or using commercial air carriers to smuggle drugs into the US. The marijuana came

from Jamaica and the cocaine came from Colombia. The witness was not a user of drugs, and does not even smoke. Sometimes though the witness would "taste" the drugs to test its quality.

The witness submitted to a polygraph test by DEA in about 1994. The witness was told that he had passed the polygraph.

In Norinsberg Corporation v. United States Department of Agriculture, 47 F.3d 1224 (D.C. Cir. 1995), the D.C. Court of Appeals discussed the requirement of the Jencks Act that the government had to disclose only those prior witness statements "which relates to the subject matter as to which the witness has testified". There the court reasoned that the "relates to" requirement of the act served to ensure that only documents "overlapping" with the subject matter of the testimony, not the subject matter of the proceeding, had to be disclosed. Id. at 1229. Circuit courts in the First, Second, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits have reached the same conclusion.

Should the defendant move for the government to produce transcripts of the witness' testimony at the various trials noted above, the government will rely on Norinsberg to oppose such a motion.

                                                Respectfully submitted,

                                              _____/s/_____
                                              Paul W. Laymon
                                              Trial Attorney
                                              Narcotic and Dangerous Drugs
                                              Department of Justice
                                              1400 New York Avenue NW
                                              Washington, DC 20005
                                              Phone    202-514-1286
                                              Facsimile  202-514-1483

CERTIFICATE OF SERVICE

I certify that a copy of this response was sent via e-mail and facsimile to Dani Jahn, Heather Shaner, and Elise Haldane, attorneys for the defendants, on this 11th day of June, 2007.

_____/s/_____
Paul W. Laymon