UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

| | | |
|---|---|---|
| UNITED STATES | * | |
| v. | * | Criminal No. 06-248 (JDB) |
| ERIK DONAIRE CONSTANZA- BRAN<br>JUAN DEL CID MORALES<br>AUGUSTIN ALVARO MEJIA | *<br><br>* | |

RESPONSE CONCERNING CRAWFORD, INFORMANT INFORMATION,
AND EVIDENCE PREDATING ENTRY INTO CONSPIRACY

Comes the United States through Kenneth A. Blanco, Chief, Narcotic and Dangerous Drug Section, Department of Justice, and Paul W. Laymon, Kia Habisreitinger, and Brian Tomney, Trial Attorneys, Narcotic and Dangerous Drug Section, and responds to several issues raised by the evidence.

### CRAWFORD

The Supreme Court's decision in *Crawford v. Washington,* 541 U.S. 36 (2004), does not apply to those portions of the recordings containing statements by a nontestifying informant. *United States v. Walter,* 434 F.3d 30, 33-35 (1st Cir. 2006). In *Walter,* an informant recorded meetings with Walter in which the informant bought firearms from Walter. The first trial ended with a hung jury, so in the second trial the government did not call the informant as a witness and instead relied solely on the recorded meetings. *Id.* at 33. The court rejected Walter's *Crawford* claim, noting that the Confrontation Clause does not bar the use of testimonial statements introduced solely to place a defendant's admissions into context. *Id.* at 34-35.

Other circuits reach the same result. In *United States v. Nettles,* 476 F.3d 508, 517-18

(7th Cir. 2007), Nettles was convicted of attempting to destroy a federal courthouse based on audio and video recordings of his conversations with "Anicua" and "Ali". *Id.* at 511, 517. At his trial, Anicua testified but Ali did not. Rejecting Nettles' *Crawford* challenge, the court concluded that Ali's statements were "merely used to provide context to Nettles' admissions" and that Ali was not a witness against Nettles for Sixth Amendment purposes. *Id.* at 517-18. In *United States v. Bobb,* 471 F.3d 491, 498-99 (3rd Cir. 2006), the defendant objected to the trial testimony of various witnesses about statements made by the defendant, co-conspirators, and non-conspirators that were "offered to give context and not for their truth". *Id.* at 498. The court found no Confrontation Clause violation in surreptitiously recorded statements offered for the purpose of showing context, not for their truth. *Id.* at 499. In *United States v. Faulkner,* 439 F.3d 1221, 1225-27 (10th Cir. 2006), one Hargrove made recorded calls from a prison to the appellants to conspire to murder another. *Id.* at 1223. At trial Hargrove did not testify, and there was no previous chance to cross-examine him, so appellants claimed a violation of *Crawford*. *Id.* at 1225. The court rejected this claim because Hargrove's statements were not offered for the truth of the matter asserted. *Id.* at 1226. And in *United States v. Valdes,* 214 Fed. Appx. 948, 950-51 (11th Cir. January 23, 2007) (summary), the court rejected a *Crawford* claim concerning a nontestifying informant's recorded telephone calls to Valdes, finding that the statements were not hearsay and were offered to provide context for Valdes's half of the conversations. *Id.* at 950.

In the instant case, the absent informant ("Spaniard" or "Iberia") appears at the June meeting, at the July meeting, and in at least one phone call to Bran on N34, at 5:14 p.m. A review of the transcripts reveals that the absent informant speaks in the flow of the conversation, and his comments and questions are part of the context of what is being said. His statements

are not offered for the truth of the matter asserted, which seems inherently to be the case since he was posing (along with the other informant) as a drug trafficker. Since his statements are not offered for the truth, and are not hearsay, there is no Confrontation Clause violation.

## SPANIARD

The defendant's request for information about the informant "Spaniard" should be denied because his statements are not being introduced for the truth of the matter asserted, and therefore the defendant cannot attack his credibility. See Fed.R.Crim.P. 806. Rule 806 provides that when the government introduces a hearsay statement of a nontestifying witness, the credibility of the declarant may be attacked. The rule does not permit a party to attack the credibility of a nontestifying witness whose statements are not hearsay. In *United States v. Perez,* 68 F.R.EvidServ. 755 (S.D.N.Y. 2005), the district court concluded that the government does not have to disclose *Giglio* material for a nontestifying informant, who would not be called as a witness by the government. "When a declarant's credibility has not been put into issue, it cannot be attacked with impeachment material, and the Giglio disclosure obligation therefore is not met." *Id.* at p.4.

Further, at least three circuit courts have found no *Giglio* (or *Brady)* violation in not disclosing impeachment information about a nontestifying witness. In *United States v. Green,* 178 F.3d 1099, 1109 (10th Cir. 1999), the court noted that because *Giglio* applies " only to impeachment information relating to a government witness", *Giglio* does not apply to a witness not called to testify. *Id.* at 1109. In *United States v. Mullins,* 22 F.3d 1365, 1372 (6th Cir. 1994), the court noted that "(w)e find no authority ... that the government must disclose promises of

immunity made to individuals the government does not have testify at trial." And in *United States v. Valdes,* 214 Fed. Appx. 948, 951 (11th Cir. January 23, 2007) (summary), the court found no *Giglio* violation where the government did not turn over impeachment information about a nontestifying informant. The court noted that "*Giglio* requires the government to provide impeachment information about testifying witnesses, and the informant did not testify as a witness at trial... The government's refusal to disclose to Valdes impeachment evidence regarding its confidential informant did not violate *Giglio*."

       In a D.C. case, the defendant in *United States v. Morrow,* 2005 WL 3136806 (D.D.C. 2005) requested the production of all favorable evidence concerning witnesses whose testimony would be admitted pursuant to the hearsay exception for coconspirator statements. Judge Kollar-Kotelly's opinion surveyed the caselaw on disclosure involving nontestifying witnesses. The court noted that it wished to fashion a rule which would not permit the government to avoid its disclosure obligations simply by not calling a witness to testify. After balancing the parties interests, the court ordered the government to produce *Brady* and *Giglio* material only from "a declarant falling under the Federal Rule of Evidence 801(d)(2)(e)", that is, the coconspirator statement exception. *Id.* at p. 9.

       The "Spaniard" is unavailable to testify because his whereabouts are unknown and he is presumed to be dead. This is not the case where the government has elected not to call a witness to testify in order to avoid the disclosure of impeachment material. Any information about the "Spaniard" does not impeach any fact in evidence, does not negate any testimony, and would serve only to confuse and prejudice the jury.

**EVIDENCE PREDATING ENTRANCE INTO CONSPIRACY**

In *United States v. United States Gypsum Company,* 333 U.S. 364, 393 (1948), a case involving a prosecution for conspiracy to violate the Sherman Act, the Supreme Court wrote that the "declarations and acts of the various members, even though made or done prior to the adherence of some to the conspiracy, became admissible against all" who joined the conspiracy later. The circuits generally agree that a coconspirator's statements made before a defendant joins the conspiracy are admissible against the defendant as long as the conspiracy existed at the time the statements were made. *United States* v. *Leroux,* 738 F.2d 943, 949-950 (8th Cir 1984). Put another way, a defendant who joins a conspiracy at a later date, takes the conspiracy as he finds it. When he joins and actively participates, he adopts the previous acts and declarations of his fellow coconspirators, "at least as they tend to show the nature and objectives of the conspiracy he joined". *United States v. Coe,* 718 F.2d 830, 839 (7th Cir. 1984).

Some cases illustrate this point. In *United States v. Jackson,* 757 F.2d 1486, 1490 (4th Cir. 1985), the court admitted coconspirators' statements made in March even though Jackson did not join the conspiracy until April. In *United States v. Coe,* 718 F.2d 830, 833, 838-9 (7th Cir. 1984), an informant recorded 19 phone calls and 26 meetings in March 1982 with Coe about selling marijuana. On April 15, 1982, codefendants Korenak and Joseph were mentioned for the first time when all three showed up to buy $12,000 worth of marijuana from the informant who was posing as a drug dealer. On appeal, Korenak claimed the March activity was not admissible against him, since he did not join the conspiracy until April 15. The court disagreed, noting that Korenak adopted the previous acts by joining the conspiracy, because the previous acts showed the nature and objective of the conspiracy. *Id.* at 838-839. In *United States v. Leroux,* 738 F.2d

943, 946, 950 (8th Cir. 1984), an undercover agent met codefendant O'Dell in early December 1980 and recorded 68 calls and 24 meetings dealing with stolen vehicles. Leroux was not present for any of that, and did not surface until December 18, 1980. Leroux argued on appeal that he had no involvement in the conspiracy until December 18, so the calls and meetings in early December could not be used against him. But the court disagreed, holding that the "parties preceeded under the assumption that the deal had already been struck". *Id.* at 950. In *United States v. Heater,* 689 F.2d 783, 787 (8th Cir. 1982), an informant talked to coconspirator Craig in April 1978, though Heater did not join the conspiracy until May 1978 when he traveled to Miami. On appeal the court rejected Heater's claim that the April 1978 conversations could not be used against Heater, writing that Heater could not "avoid criminal responsibility by merely having had the fortuity" to join a conspiracy later than others. *Id.* at 788. And in *United States v. Anderson,* 532 F.2d 1218 (9th Cir. 1976), the court noted that once a defendant joined a conspiracy, conspirator statements were admissible even if made "prior to entry" into the conspiracy by the defendant.

Another way to analyze the issue is reflected in *United States v. Simmons,* 431 F.Supp. 2d 38, 57-58 (D.D.C. 2006), in which Judge Lamberth admitted what the defendant described as "prior bad act" evidence of drug trafficking and its related violence. *Id* at 57. At trial, the court found the evidence admissible "to show the formation of the conspiracy and particularly the circumstances which led the defendant ... to join the conspiracy. Evidence relevant to proving a conspiracy is admissible, regardless of when the acts were committed." *Id.* at 58. And the court noted pointedly that the "fact that evidence precedes the date of the inception of the conspiracy charged in the indictment does not preclude its admission". *Id.* The court concluded that the evidence was admissible either as direct evidence of the conspiracy

or evidence inextricably intertwined with evidence of the conspiracy. While the case followed a more traditional analysis of inextricably intertwined evidence versus 404(b) evidence, and did not deal directly with coconspirator statements predating the entry of a defendant into the conspiracy, its analysis offers an alternate view which leads to the same result.

In the instant case, the June meeting and the several phone calls thereafter leading up to the July meeting, are necessary to show the nature and objective of the conspiracy, and to identify the parties and their relationship to each other. It would make no sense to the jury to suddenly jump into July phone calls involving Constanza Bran and the informant, without knowing who Bran was, who Bardales was, and what they had discussed with the informant in June and the later phone calls. When a week or so before the July meeting, Bran tells the informant he is bringing two more people with him to the meeting, and they are from a different level, this only makes sense against the backdrop of the June meeting and subsequent phone calls.

Accordingly, the United States moves for the relief requested above.

Respectfully submitted,

____s/s_____
Paul W. Laymon
Trial Attorney
Narcotic and Dangerous Drugs
Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Phone    202-514-1286
Facsimile  202-514-1483

## CERTIFICATE OF SERVICE

I certify that a copy of this response was sent via e-mail to defense counsel 31 October 07.

_____ s/s_____
Paul W. Laymon