UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLOMBIA

UNITED STATES                                    *

v.                                               *     Criminal No. 06-248 (JDB)

ERIK DONAIRE CONSTANZA- BRAN         *

and

AGUSTIN ALVARO MEJIA                  *

MOTION TO CONSOLIDATE

     Comes the United States through Kenneth A. Blanco, Chief, Narcotic and Dangerous Drug Section, Department of Justice, and Paul W. Laymon, Kia Habisreitinger, and Brian Tomney, Trial Attorneys, Narcotic and Dangerous Drug Section, and moves the court pursuant to Rules 8 and 12, Fed.R.Crim.P., to consolidate for trial the cases involving defendants Mejia and Constanza Bran. On October 26, 2006, the court denied the Government's motion for consolidation of all three defendants, Mejia, Bran, and Morales, but reserved ruling on the consolidation of Bran and Mejia.

     The government had previously moved for separate trials for the three defendants, citing a concern that each of the three had confessed, or given incriminating statements, and that each defendant had implicated the other two defendants in these statements. The court granted this motion and set a separate trial date for each defendant. The government has reconsidered the possibility of redacting the statements made by each defendant and now believes that it is possible to try all defendants together without violating *Bruton v. United States*, 391

U.S. 123, 137 (1968). Further, joinder would appear to be in the interests of judicial economy (one more three week trial instead of two more), does not prejudice the defendants, and would conserve government resources.

The law concerning <i>Bruton</i> and its progeny

*Bruton* held that a defendant is deprived of his Sixth Amendment right to confrontation when he is incriminated by the introduction of a nontestifying codefendant's confession at their joint trial, regardless of whether a jury is instructed to consider the confession only against the defendant who made the confession. *Bruton,* 391 U.S. at 126,137. In *Richardson v. Marsh,* 481 U.S. 200, 211 (1987), the Supreme Court held that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's redacted confession which is redacted to eliminate both the names of other defendants and explicit reference to the existence of other codefendants. The *Richardson* court expressed no opinion on the admissibility of a confession in which the defendant's name was replaced with a symbol or neutral pronoun. *Id.* at 211, n.5. In *Gray v. Maryland,* 523 U.S. 185, 188 (1998), the Court ruled that *Bruton* also bars admission of a nontestifying codefendant's confession which was redacted to simply replace a name with an obvious blank space, a word such as "deleted", or a symbol or other similarly obvious indication of alteration.

In a pre-*Gray* case, the District of Columbia Circuit held that a redacted statement that used neutral pronouns ("individual", "others") rather than the defendant's name did not violate the *Bruton/Richardson* rule. *United States v. Washington,* 952 F.2d 1402, 1404-1405 (D.C.Cir. 1992). More recently, in *United States v. Brodie,* 326 F.Supp 2d 83, 94-99 (D.D.C. 2004), Judge Huvelle dealt with the application of the *Bruton/Richardson/Gray* rule in the context of oral post-arrest statements. Judge Huvelle concluded that it was permissible for the government to

replace the defendants' names with general terms such as "others" or "another", but not with the more descriptive terms "loan officer" or "loan officers", reasoning that the former did not create an "inevitable association" with the codefendants and did not "invite inferences that a jury could make immediately without the aid of other evidence". *Id.* at 96.  The court concluded that the use of terms like "loan officer" was an "obvious pointer" to the defendants.  *Id.*

Further, *Bruton* and its progeny do not apply to statements which satisfy the coconspirator non-hearsay rule under Federal Rules of Evidence 801(d)(2)(E).  *United States v. Carson,* 455 F.3d 336, 364-365 (D.C.Cir. 2006), citing *Bourjaily v. United States,* 483 U.S. 171, 182-84 (1987); *United States v. Whitehorn,* 710 F.Supp. 803, 823-25 (D.D.C. 1989).  That is, the statement of a conspirator may be used against a co-conspirator at their joint trial even if the conspirator making the statement does not testify.  *Whitehorn,* 710 F.Supp. at 823.  The recent Supreme Court case of *Crawford v. Washington,* 541 U.S. 36, 56 (2004) does not alter the holdings in *Carson* and *Whitehorn.*  In *Crawford,* the court held that out-of-court statements that are testimonial are barred under the Confrontation Clause unless the witnesses are unavailable and the defendants had prior opportunity to cross-examine them.  *Id.* at 59,68.  *Crawford* itself favorably cites *Bourjaily* and does not overturn it.  *Id.* at 58.  And *Carson* noted that coconspirator statements in furtherance of a conspiracy do not fall within the definition of "testimonial" and are thus not covered by the holding in *Crawford.*  *Carson,* 455 F.3d at 280, n. 25, citing *Crawford v. Washington,* 541 U.S. at 56.

### The statements

On September 27, 2006, the three defendants, including Del Cid Morales who now stands convicted, were flown on a DEA plane from El Salvador to the United States.  On the

flight back, each defendant waived his *Miranda* rights and each defendant gave an oral statement incriminating himself and the other defendants.

In pertinent part, Bran said he had known Mejia for one year and had known Morales for all his (Bran's) life. Bran also said he had known Bardales and Serrano for four years. Bran said that the man known to him as "Augustine" (the informant) wanted to move a container of cocaine to Guatemala, and that Bardales had told Bran that the cocaine was to be transported to the Mexican border and then onto the United States. Bran said that both Mejia and Morales were former law enforcement officers and that both maintained their law enforcement contacts. Bran said that Bardales was to arrange with Customs for the protection of the drug shipments, Bran was to set up the business that was to be used to receive the container, and Mejia and Morales were to use their law enforcement contacts to provide protection for the container. (Bran made many other statements that did not mention or reference Mejia or Morales, and which do not implicate *Bruton*. Those statements are not discussed herein.)

Mejia said that he had been a police officer in Guatemala for 15 years and had been retired over an issue of an assault at a bank. Mejia said that Bran had asked Mejia and Morales to act as police officers and that a Colombian male wanted them to establish a company that could be used to move a container of cocaine. Mejia said that Augustine was moving a shipment of cocaine that originated in Colombia and was being transported to Guatemala from Panama. Mejia said Augustine was seeking protection for the cocaine through Guatemala to the Mexican border, and that Augustine had advised that Augustine had his own network to move the drugs to the US. Mejia said that he and Morales represented themselves as Guatemalan police officials, that Mejia claimed to be Edwin Rene Sapon Ruiz. Mejia said that he (Mejia) was lying about his identity to make money.Mejia said that he had thought about stealing the cocaine and selling it in

Guatemala for $4500 to $5000 , but that he had not shared this idea with either Bran or Morales.

(Morales said that Bran had asked him to go to El Salvador on September 27, 2006 and that while there they would be receiving money. He said that about two months before, Bran had told Morales about a container of cocaine and that Bran needed someone with connections to the police in Guatemala to provide protection for the container in Guatemala. Morales said that the container was to contain Christmas goods, but he was aware that the container was to contain cocaine. Morales said he met "Augustine" with Bran, Mejia, and Bardales, and that Morales had told Augustine in the meetings that he was Ovidio Fajardo. Morales said that Augustine was paying for the protection of a shipment of cocaine through Guatemala to Mexico. Morales said that in a previous meeting, Morales had received $10,000 from Augustine and that Morales had shared the money with Bran, Mejia, and a third individual at the meeting. Morales said that Bardales had represented to Augustine that Bardales had a network of people who could facilitate moving the cocaine from Mexico to the US, but that Augustine would use his own people to do that.)

<u>The proposed redacted statements</u>

The government would propose two alternatives to resolving the *Bruton* issue. The first would be to delete certain references to the codefendants and to replace other references with pronouns such as "others". The second alternative would be to completely redact any mention or reference to a codefendant, including the use of the word "others" or like words.

Thus, in the first alternative, Bran's statement would be redacted to state:

> Bran said he had known Bardales and Serrano for four years. Bran said the man known to him as "Augustine" wanted to move a container of cocaine to Guatemala, and that Bardales had told Bran that the cocaine

> was to be transported to the Mexican border and then onto the United States. Bran said that Bardales was to arrange with customs for the protection of the drug shipments, Bran was to set up the business that was to be used to receive the container, and others were to use their contacts to provide protection for the container.

In the second alternative, Bran's statement would be as noted above, except that the phrase "and others were to use their contacts ..." would be deleted.

As to Mejia, in the first alternative, his statement would be redacted to state:

> Mejia said he had been a police officer in Guatemala for 15 years and and had been retired over an issue of an assault at a bank. Mejia said he had been asked to act as a police officer and that a Colombian male wanted to establish a company that could be used to move a container of cocaine. Mejia said that Augustine was moving a cocaine shipment that originated in Colombia and was being transported to Guatemala from Panama. Mejia said that Augustine was seeking protection for the cocaine through Guatemala to the Mexican border, and that Augustine had advised that Augustine had his own network to move the drugs to the US. Mejia said he represented himself as a police official named Edwin Renee Sapon Ruiz, and that he was lying about his identity to make money. Mejia said that he had thought about stealing the cocaine and selling it in Guatemala for $4500 to $5000 per kilogram, but that he had not shared this idea with the others.

In the second Mejia alternative, the statement would simply delete the last three words of the proposal, "with the others".

### Argument

The proposed redactions, either alternative one or alternative two, satisfy the *Bruton/Richardson/Gray* test. The statements would be redacted to eliminate the names of the codefendants and any explicit reference to their existence. In the alternative which uses other pronouns such as "others", the use of these pronouns would not lead a jury to inevitably conclude that the "other" was one of the codefendants, in part because there were other people at the meetings or in the phone calls, including "Filipino" and various drivers, and in part because the use of the pronouns does not point to any person in particular. As the district court noted in *Brodie,* the use of "others" does not create an inevitable association with the defendants or invite inferences that a jury could make immediately without the aid of other evidence.

Further, as to the various phone calls in which Bardales, "Filipino", Bran, or Morales participated, their statements are the statements of coconspirators made in furtherance of the conspiracy, and as such are not covered by the rule in *Bruton.*

Accordingly, the United States moves the court to set a *Bruton* hearing if it cannot decide the issue on the basis of the motion and the responses by the defense, and to consolidate and join all defendants for trial together. The government would move the court to join the defendants Mejia and Bran together for trial.

        Respectfully submitted,

        _____/s_____

Paul W. Laymon
Trial Attorney
Narcotic and Dangerous Drugs
Department of Justice
1400 New York Avenue NW
Washington, DC 20005
Phone    202-514-1286
Facsimile  202-514-1483
paul.laymon@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that a copy of this response was sent via e-mail to defense counsel 20 Dec 07.

        _____/s_____
        Paul W. Laymon